Cheshire,  
Dec. 6, 1904.

## HILTON *v.* FITCHBURG RAILROAD CO.

It is the duty of a master to provide a reasonably sufficient number of competent workmen, and to employ and retain in his service none but reasonably competent and suitable persons.

If the proper performance of the master's work requires the employment of servants possessing peculiar qualifications, it is to be presumed, in the absence of evidence to the contrary, that a reasonably sufficient number of such workmen were provided.

A master who furnishes a reasonably sufficient number of servants competent to perform labor requiring peculiar skill is not liable to an employee for injuries resulting from the incompetence of a person assigned to such work by the foreman in charge.

CASE, for negligence. Trial by jury. At the close of the plaintiff's evidence, the defendants' motion that a verdict be directed in their favor was denied, subject to exception. Transferred from the April term, 1901, of the superior court by *Stone*, J.

The evidence tended to prove the following facts: On April 1, 1898, the plaintiff was employed as a blacksmith in the defendants' repair shops at Keene. His work was tempering and setting springs for locomotives. This was usually done by two blacksmiths and two helpers working together, and a part of it required the striking by one of the helpers upon the head of a tool called a set, which was held by the plaintiff. The position and arrangement of the work was such that these blows should be swung sideways and left-handed, and the work could be more conveniently and better done by a left-handed striker. Some workmen strike right-handed, some left-handed, and some both ways; but those who strike in one way cannot ordinarily deliver blows in the other. In the plaintiff's work the left-handed blows were usually struck by a helper who was absent on the day of the accident. The plaintiff informed the defendants' foreman of his regular helper's absence, and asked that one Murray, another helper, might take his place. The foreman said that the plaintiff could not have Murray, but might have Carlson, a right-handed striker who was helper to another blacksmith and who had been employed by the defendants for about nine months. Carlson was thereupon furnished as helper to the plaintiff, who directed him in the work. The second left-handed blow struck by Carlson did not land fairly on the head of the set, but struck upon one side, causing a small particle of steel to fly off and strike the plaintiff in the eye, inflicting the injuries complained of.

There was no evidence that the defendants' foreman knew Carlson was a right-handed striker only, or that he was aware of the fact that the plaintiff's work required a left-handed striker, or could be better done by such a workman; nor did it appear that the foreman was an unsuitable man for his position, or that Carlson was not a competent right-handed striker. Nothing was said by the plaintiff to the foreman as to the qualifications of the striker he required or desired.

*John E. Allen*, for the plaintiff.

*John M. Mitchell*, for the defendants.

PARSONS, C. J. Upon the view of the evidence most favorable to the plaintiff, the immediate occasion of his injury was a misdirected, left-handed blow struck by the helper Carlson, which instead of landing fairly upon the head of the tool held by the plaintiff struck it upon one side, thereby breaking off a small particle of iron which struck the plaintiff's eye, causing the injury. Carlson was without skill in striking left-handed blows, and might be found guilty of negligence in attempting to do what it might be found he ought to have known he had not the skill to do without risk of injury to his fellow-servant. There is no contention that the defendants are liable for Carlson's negligence. Recovery is sought upon the ground of a breach of the non-delegable duty owed by the defendants to the plaintiff, to exercise care to provide him with reasonably suitable instrumentalities for his work.

One obligation of the master with reference to the instrumentalities of the work is the exercise of care to supply for the work a reasonably sufficient number of competent workmen, and to employ and retain in his service none but reasonably competent and suitable servants. *Galvin* v. *Pierce*, 72 N. H. 79, 81; Bailey M. & S. 3. Relying upon the breach alleged as the cause of the injury, the burden was on the plaintiff to establish his claim by proof. In the absence of evidence tending to show a want of care, it must be presumed that such care as the occasion demanded was exercised. The rule is the same as to any instrumentality which it is the duty of the master to furnish, and applies in the case of the employment of servants as well as in the furnishing of materials and the promulgation of rules. *Manning* v. *Manchester Mills*, 70 N. H. 582; *Hill* v. *Railroad*, 72 N. H. 518; *Wabash Ry.* v. *McDaniels*, 107 U. S. 454, 457, 460; Bailey M. & S. 55. If the proper performance of the work in the defendants' repair shop required that helpers who could strike left-handed blows should be employed and at hand for service, in the absence of evidence

to the contrary it must be presumed that a reasonably sufficient number of such workmen were so employed for use when required.

There was no evidence that Carlson was not a suitable right-handed striker. It appeared that some workmen are able to strike with skill only right-handed blows and some only left-handed blows, while some are equally skilled in striking either way. It is a matter of common knowledge that comparatively few men are equally skilled with either hand; and as it is apparent that the work of the defendants' repair shop must have required men who could strike right-handed as well as those who could deliver left-handed blows, it cannot be urged that the defendants were negligent because they retained in their service a striker who was neither ambidextrous nor left-handed. There was no evidence that, so far as the defendants knew or ought to have known, Carlson was not a sober, careful, and competent workman, or that he was not so in fact. The only suggestion of carelessness against him is that which brought about the injury in this case. There is no evidence of such an act before this time, or of a general habit of carelessness. Hence it cannot be found that the defendants knew or ought to have known that he would carelessly attempt to do that which he had not sufficient skill safely to perform. The master does not warrant the competency of any of his servants to the others. The extent of the undertaking is that the master will exercise reasonable care in the selection of an employee, and if his incompetency is discovered that he will dismiss him from his service. 1 Shearm. & Red. Neg., *s.* 191; *Blake* v. *Railroad*, 70 Me. 60; *Wright* v. *Railroad*, 25 N. Y. 562, 566; *Columbus etc. Ry.* v. *Troesch*, 68 Ill. 545,—18 Am. Rep. 578.

The real claim upon the evidence is that the foreman was negligent in assigning Carlson as a helper to the plaintiff. There was no evidence that the foreman was not a suitable man for the place, and consequently there was no fault or negligence on the part of the defendants in employing him. *Summersell* v. *Fish*, 117 Mass. 312, 317. There was no direct evidence that the foreman knew Carlson could not strike left-handed blows, or that the plaintiff's work was customarily done in that way; but assuming that from his position knowledge on these points on his part might be inferred, there appears to be nothing in the case upon which to base the inference that the foreman ought reasonably to have anticipated that Carlson, in acting as helper for the plaintiff, would negligently attempt to do what he was without the necessary skill to do safely. The plaintiff's work could be better or more conveniently performed with the assistance of a helper who could strike left-handed blows, but it could be done otherwise. Although the left-handed work was usually done by the helper

whose place Carlson took, there was no evidence that the work might not have been done by the other regular helper. But assuming that Murray was a left-handed striker, and that on the evidence the foreman might be found guilty of negligence in telling the plaintiff he could not have Murray, for whom he asked, but could have Carlson, are the defendants responsible for such negligence?

The responsibility of the master is not determined by a difference in rank between the servant injured and the one in fault, or by the fact that the servant guilty of negligence is foreman or in control of others, but upon the nature of the act complained of; whether it is an act of service, or an attempted performance of a non-delegable duty of the master. *Wallace* v. *Railroad*, 72 N. H. 504; *Galvin* v. *Pierce*, 72 N. H. 79; *McLaine* v. *Company*, 71 N. H. 294. The principle involved in determining whether the act in question is one of service or mastership is not "derived from exact or ingenious definitions of the words 'place,' 'tools,' or 'appliances,' however convenient and useful they may be in a particular case, but from considerations of the requirements of ordinary and reasonable care on the part of both the employer and the employee. If as a matter of fact a particular course of conduct on the part of the master toward his servant is unreasonable when measured by the conduct of men in general engaged in similar occupations, he cannot shield himself as a matter of law from the consequences of such conduct by a resort to verbal distinctions, which oftener serve to obscure than to elucidate legal principles." *English* v. *Amidon*, 72 N. H. 301, 303, 304. Similarly, if it is plainly unreasonable that a particular duty should be personally imposed upon the master, such imposition cannot be derived from the extension of the duty beyond what can fairly be termed reasonable by logical deduction from the terms usually employed in defining the duty.

The duty of the master to furnish his servants tools and appliances is as extensive as that to supply competent fellow-servants. Implements and machinery naturally deteriorate from use and lapse of time, but additional experience tends to make a competent employee more competent; and the same degree of care may not be required in examination and inspection as to each instrumentality after suitable ones are once furnished. *Chapman* v. *Railway*, 55 N. Y. 579, 586. As to tools or materials, the master's duty is performed by furnishing a sufficient, suitable supply. Because it is his duty to furnish tools and materials for his servant, it does not follow that it is his duty to see that a suitable tool or suitable material is used by each servant in each detail of the work. When the master furnishes a sufficient supply of suitable

tools or materials, the servant cannot recover for an injury resulting from the selection by another servant of something not suitable for the particular purpose. *Shaw* v. *Railway, ante, p.* 65; *Manning* v. *Manchester Mills,* 70 N. H. 582; *Carroll* v. *Company,* 160 Mass. 152; *Maher* v. *Thropp,* 59 N. J. Law 186. This results from the principle that the performance of the work is the duty of the servant. *McLaine* v. *Company,* 71 N. H. 294. When the master has furnished suitable and sufficient instrumentalities for the work, the duty of personally supervising the use of the instrumentalities cannot reasonably be imposed upon him. To do so would impose upon him, instead of upon the servant, the doing of the work. The master having furnished a suitable supply of competent servants for the work, the selection of the individuals for the details of the work is as much a part of the work as the selection of a particular tool or material.

Upon the evidence it must be found that Carlson was properly employed by the defendants to strike right-handed blows. As there was no evidence the defendants had not furnished left-handed strikers, who might have been used for the particular service required, the use of Carlson (a right-handed striker) by the foreman or the plaintiff, to strike left-handed blows, cannot differ in principle from the use by either of an unsuitable appliance or material when suitable ones have been furnished. His selection was a mere detail of the general work. It was not an act providing for instrumentalities in carrying on the business, but an act done in the use of the instrumentalities furnished; a subordinate as distinguished from a supreme or masterful act. *Wallace* v. *Railroad,* 72 N. H. 504, 514. No ground appears upon which the selection and use of an animate instrumentality—a co-servant—for a detail of the work, out of a number of suitable ones supplied by the master, can be logically distinguished from a like selection of inanimate instrumentalities—tools or materials. Hence it must be held that if the foreman was negligent, his negligence was that of a fellow-servant. There being no evidence of negligence in the performance of any duty personal to the master, the defendants' motion should have been granted. The exception to the denial of this motion is sustained. A verdict for the defendants is ordered, upon which there is

*Judgment for the defendants.*

All concurred.